

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
STATE OF CALIFORNIA,
STATE OF COLORADO,
STATE OF CONNECTICUT,
STATE OF DELAWARE,
STATE OF FLORIDA,
STATE OF GEORGIA,
STATE OF HAWAII,
STATE OF ILLINOIS,
STATE OF INDIANA,
STATE OF IOWA,
STATE OF LOUISIANA,
STATE OF MARYLAND,
COMMONWEALTH OF MASSACHUSETTS,
STATE OF MICHIGAN,
STATE OF MINNESOTA,
STATE OF MONTANA,
STATE OF NEVADA,
STATE OF NEW JERSEY,
STATE OF NEW MEXICO,
STATE OF NEW YORK,
STATE OF NORTH CAROLINA,
STATE OF OKLAHOMA,
STATE OF RHODE ISLAND,
STATE OF TENNESSEE,
STATE OF TEXAS,
STATE OF VERMONT,
COMMONWEALTH OF VIRGINIA,
STATE OF WASHINGTON,
STATE OF WISCONSIN, and
the DISTRICT OF COLUMBIA,
*EX REL.* ████████████████████████████
████████████

                                    Plaintiffs/Relators,

    vs.

OPTUM, INC., OPTUMRX, INC.,
UNITEDHEALTH GROUP, INC., CIGNA
CORPORATION, CIGNA HEALTH AND LIFE
INSURANCE COMPANY and JOHN DOES 1-
100,
                    Defendants.

FILED
2017 MAR -8  P 3: 34
U.S. DISTRICT COURT
HARTFORD, CT.

Civil No. 3:17cv 400 JBA

**FILED *IN CAMERA***
**AND UNDER SEAL PURSUANT TO**
**31 U.S.C. § 3730**

**NOT FOR PUBLIC DISCLOSURE**
**DO NOT PLACE IN PRESS BOX**
**DO NOT ENTER ON PACER**

**COMPLAINT FOR VIOLATIONS**
**OF THE FALSE CLAIMS ACT AND**
**STATE LAW COUNTERPARTS**

**JURY TRIAL DEMANDED**

This is an action brought on behalf of the United States of America by ███████████ ███████████ by and through their attorneys, against Defendants, pursuant to the *qui tam* provisions of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.*, and on behalf of the State of California, the State of Colorado, the State of Connecticut, the State of Delaware, the State of Florida, the State of Georgia, the State of Hawaii, the State of Illinois, the State of Iowa, the State of Indiana, the State of Louisiana, the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the State of Minnesota, the State of Montana, the State of Nevada, the State of New Jersey, the State of New Mexico, the State of New York, the State of North Carolina, the State of Oklahoma, the State of Rhode Island, the State of Tennessee, the State of Texas, the State of Vermont, the Commonwealth of Virginia, the State of Washington, the State of Wisconsin and the District of Columbia (collectively, the "*Qui Tam* States") in violation of the following statutes:

(a)     The California False Claims Act, Cal. Gov't Code §§ 12650, *et seq.*;
(b)     The Colorado Medicaid False Claims Act, §§ 25.5-4-304, *et seq.*;
(c)     The Connecticut False Claims Act, Conn. Gen. Stat. §§ 17b-301b, *et seq.*;
(d)     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, §§1201, *et seq.*;
(e)     The Florida False Claims Act, Fla. Stat. §§ 68.081, *et seq.*;
(f)     The Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168, *et seq.*;
(g)     The Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21, *et seq.*;
(h)     The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. Ann. §§ 175/1, *et seq.*;
(i)     The Indiana False Claims and Whistleblower Protection Act, Indiana Code §§ 5-11-5.5, *et seq.*;
(j)     The Iowa False Claims Act, §§ 685.1, *et seq.*;
(k)     The Louisiana Medical Assistance Programs Integrity Law, La. R.S. §§ 46:437.1, *et seq*; §§ 46:438.1, *et seq.*; §§ 46:439.1, *et seq.*; & §§ 46:440.1, *et seq.*;
(l)     The Maryland False Health Claims Act, § 2-601, *et seq.*;
(m)     The Massachusetts False Claims Act, Mass. Ann. Laws. Ch. 12, §§ 5A, *et seq.*;
(n)     The Michigan Medicaid False Claims Act, MCLS §§ 400.601, *et seq.*;
(o)     The Minnesota False Claims Act, Minn. Stat. §§ 15C.01, *et seq.*;
(p)     The Montana False Claims Act, Mont. Code Anno. §§ 17-8-401, *et seq.*;

- 2 -

(q)     The Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. §§ 357.010, *et seq.*;

(r)     The New Jersey False Claims Act, N.J. Stat. § 2A:32C-1, *et seq.*;

(s)     The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-1, *et seq.*, New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 44-9-1, *et seq.*;

(t)     The New York False Claims Act, NY CLS St. Fin. §§ 187, *et seq.*;

(u)     The North Carolina False Claims Act, 2009-554 N.C. Sess. Laws §§ 1-605, *et seq.*;

(v)     The Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, §§ 5053, *et seq.*;

(w)     The Rhode Island False Claims Act, R.I. Gen. Laws §§ 9-1.1-1, *et seq.*;

(x)     The Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181, *et seq.*;

(y)     The Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001, *et seq.*

(z)     The Vermont False Claims Act, Vt. Stat. tit. 32, § 631, *et seq.*;

(aa)    The Virginia Fraud Against Taxpayers Act, Va. Code §§ 8.01-216.1, *et seq.*;

(bb)    The Washington Healthcare False Claims Act, RCW 74.66.005, *et seq.*;

(cc)    The Wisconsin False Claims for Medical Assistance Act, Wis. Stats. §§ 20.931, *et seq.*; and,

(dd)    The District of Columbia False Claims Act, D.C. Code Ann. §§ 2-308.03, *et seq.*

## SUMMARY OF THE CASE

1.      This is an action to recover damages and civil penalties on behalf of the United States and the *Qui Tam* States arising from false and/or fraudulent records, statements, and claims made, used, and caused to be made, used, or presented by Defendants and/or their agents, employees, and co-conspirators under the False Claims Act and the *Qui Tam* States' statutes. These claims arise out of overpayments made by the government and improperly retained by Defendants in connection with prescription pharmaceutical purchases.

2.      This case involves insureds with coverage under both a primary private insurance plan and a secondary government health plan where the primary private insurer falsely bills the secondary government health plan payer.

3.      Defendants UnitedHealth Group, Inc. ("UHG") and Cigna Corporation ("Cigna") provide private primary health insurance, including prescription pharmaceutical insurance

coverage.  Optum (a wholly owned business of UHG, as defined further below) provides

pharmacy benefit manager ("PBM") services for UHG, Cigna and others, including for the

transactions at issue here.  Under the terms of Defendants' primary insurance plan coverage, an

insured is responsible for making deductible, co-payments, and coinsurance payments in

connection with the purchase of prescription pharmaceuticals.  Where such insureds are also

insured by a government health program (such as Medicaid) the United States and/or the *Qui*

*Tam* States make secondary payments on behalf of such insureds to supplement the payments

that are supposed to be made by the primary insurer. The United States and/or the *Qui Tam*

States will thus cover some or all of the insured's responsibility under the primary insurance plan

to pay for deductibles, co-payments, or coinsurance obligations.  However, the government

should never pay more than the amount that the provider, here a pharmacy, has agreed to be paid

for a medication prescription.

4.      The gravamen of this case is that Defendants falsely submitted claims to the

government for secondary payments in connection with the purchase of prescription

pharmaceuticals even though Defendants had set up a scheme wherein the insured was under no

obligation to pay any amount to the provider pharmacy for said pharmaceuticals.  As a result,

when Defendants caused the government to make a payment as a ***secondary*** payor, the payment

did not go toward a prescription medicine, it was an illegal payment to *Defendants*.

5.      Defendants' scheme works as follows. An insured buys a pharmaceutical at a

pharmacy. After processing the claim with the primary insurer, the PBM—acting on behalf of

the primary insurer—submits a secondary claim to the relevant government health plan for: (1) a

co-payment for the pharmaceutical; (2) the purported price of the pharmaceutical; or (3) a

portion of the purported cost of the pharmaceutical as a coinsurance payment. But, in each of

these three scenarios, Defendants and the provider pharmacy have contractually agreed to have the pharmacy pay Defendants an amount known as a "clawback." The "clawback" is a money-making mechanism by which the Defendants have used their leverage to require a pharmacy to make a payment to Defendants that actually exceeds the cost of the drug upon which the Pharmacy and Defendants have agreed. As a result, for such a transaction the pharmacy has paid the full cost of the medication, thus leaving no secondary payer obligation and negating any requirement by any other party or insurer to pay any further amounts. Despite the fact that no claim for secondary insurance payment exists or should be filed, Defendants nevertheless fraudulently bill, and accept excessive payments from, the government in connection with such pharmaceutical sales.

6.      The following actual example illustrates Defendants' scheme. In June 2015, as detailed further below, Cigna processed a claim for a ████ insured that included a co-payment obligation for a prescription pharmaceutical purchase. Because the insured was a Medicaid beneficiary, the pharmacy could not collect that co-payment from the insured under ████ Medicaid rules. Instead, the pharmacy processed the claim as directed and required by Optum, and the claim was submitted to Medicaid as the secondary insurer. Pursuant to that secondary claim, Medicaid paid ████ which was the amount that the pharmacy and Defendants, through Optum, had agreed was the cost of the prescription medication. However, pursuant to the same contracts that the pharmacy signed with Cigna and Optum, the pharmacy was also required to pay Cigna and Optum a "clawback" in the amount of ████ (which is the ostensible difference between Cigna's phantom ████ co-payment amount and the ████ pharmaceutical price). Because the pharmacy was contractually obligated to pay Defendants more than the amount that

it had agreed with Defendants was the cost of the medication, no secondary payer claim existed and none should have ever been submitted to Medicaid.

7.     Another actual example, detailed further below, occurred in July 2015 and involved a pharmaceutical product that cost the pharmacy ████ (composed of ingredient and dispensing fees).  Through their "clawback" system, however, Defendants required the pharmacy to pay them ████ and then collect from Medicaid (as the secondary payor) ████. As a result, Medicaid was not only assessed a co-payment obligation where none existed (since the pharmacy was contractually required by Defendants to accept nothing for the product), but Medicaid was charged an amount more than twice the actual cost of the product.

8.     Defendants have designed, operate and control an opaque billing system that has essentially made the pharmacy in these types of transactions a third-party payer.  Despite the fact that the Defendants, under their own system, profit from the pharmacies' obligation to accept less than what they had agreed to charge for these prescription pharmaceutical purchases—thus negating any secondary claim—Defendants nevertheless bill the government for a secondary payment, take and keep all or part of the government's payments, and thus make the government pay a false, unauthorized, undisclosed and excessive amount to Defendants. The additional unlawful amounts that Defendants charge the government represents a fee for no service and unjustly enriches Defendants at the expense of the government.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. §§ 1331 and 1345. The Court has original jurisdiction of the State law claims pursuant to 31 U.S.C. § 3732(b) because this action is brought under State laws for the recovery of funds paid by the *Qui Tam* States, and arises from the same transaction or occurrence brought

on behalf of the United States under 31 U.S.C. § 3730. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because, among other things, Defendants transact business in this District, engaged in wrongdoing in this District and because the False Claims Act authorizes nationwide service of process and the Defendants have sufficient minimum contacts with the United States of America.

11.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because Defendants transact business within this District and because the acts complained of herein occurred in this District.

12.     The causes of action alleged herein are timely brought because, among other things, of efforts by Defendants to conceal from the United States its wrongdoing in connection with the allegations made herein.

13.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint shall be filed *in camera* and shall remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

14.     Pursuant to 31 U.S.C. § 3730(b)(2) a copy of this Complaint and a written disclosure of substantially all material evidence and material information will be / have been provided to the Honorable Dierdre Daly, the United States Attorney for the District of Connecticut, and the Honorable Jefferson Sessions, United States Attorney General, or their successors.

## PARTIES

**A.      Plaintiff/Relator** ████████████

15.    Plaintiff ███████████████████ is a pharmacist.  He resides in the State of ████████.    ████████ is a registered pharmacist with a BS degree from the ████████ ████████████████████████████████████████ and is the owner of ████████ ████████████████████████. It is through his role and position as a pharmacist that ████████ learned of the clawback scheme.

**B.    Plaintiff/Relator ██████████████**

16.    Plaintiff ████████████████████ is a pharmacist. She resides in the State of ████████ ████████ is a registered pharmacist with a BS degree from ██████████████ and is the owner and operator of ████████████████████████████████. Prior to that, she served as a pharmacist at ████████████ and elsewhere. She also served a ██████████ ████████████████████████████ It is through her role and position as a pharmacist that ████████ learned of the clawback scheme at issue here.

**C.    Defendant UHG & Optum**

17.    Defendant Optum, Inc., is a Delaware corporation with headquarters in Eden Prairie, Minnesota. Optum, Inc., is a wholly owned subsidiary of UHG.

18.    Defendant OptumRx, Inc. is a California corporation, headquartered in Irvine, California. OptumRx, Inc., is a wholly owned subsidiary of UHG.

19.    Defendant UHG is a Delaware corporation, headquartered in Minnetonka, Minnesota, with a substantial presence in Connecticut.

20.    Defendants John Does 1-100, are various individuals and entities owned, controlled, operated by or affiliated with Optum, Inc., Optum, Rx, Inc., and/or UHG, but are unknown to Plaintiffs.

21.     UHG is a diversified health care benefits provider to an array of customers, markets, employers, retirees and military personnel.

22.     UHG operates in two distinct business platforms: health benefits under UnitedHealthcare ("UHC"); and, health services under Optum.

23.     Optum is a health services business serving payers, care providers, employers, governments, life sciences companies and consumers. Optum is organized in three reportable segments: OptumHealth, OptumInsight and OptumRx.

24.     In fiscal year 2015, UHG processed one half trillion dollars in gross billed charges, managed nearly $200 billion in aggregate health care spending and reported consolidated revenues of $157 billion.

25.     Optum represents a substantial source of UHG's activities providing annual pharmaceutical services to 66 million individuals and processing 1.5 billion claims totaling $85 billion. UHG expects Optum's operating margins to grow more than 30 percent in 2016 and estimates that Optum will contribute 42% or more of UHG's enterprise-wide operating income in 2016. These services are primarily driven by a single Optum sub-segment, OptumRx.

26.     For example, in the first quarter of 2016, UHG reported $44.5 billion in revenues, an increase of 25% year-over-year. While UHC revenue grew 10%, revenue at Optum jumped 54% with each Optum sub-segment showing growth of at least 20%, with OptumRx showing the biggest gains due to a combination of acquisitions and organic growth, boosting sales by 72%, for a total of $14.3 billion. OptumRx script fulfillments grew by 71% to 252 million. *See* Form 8-K, dated 4.19.16, at Ex. 99.1 (press release).

27.     Similar results ensued in the second quarter of 2016, where UHG reported $46.5 billion in revenues, an increase of 28% year-over-year. While UHC revenue grew 14%, revenue

at Optum jumped 52%, with OptumRx leading the other Optum sub-segments with revenue

growth of 69%, for a total of $15.1 billion. OptumRx script fulfillments grew by 69% to 250

million adjusted scripts. *See* Form 8-K, dated 7.19.16, at Ex. 99.1 (press release).

28.     OptumRx provides broad pharmacy care services and programs to a substantial

majority of UHC members, and manages specialty pharmacy benefits across nearly all of UHC's

businesses. These services and programs include "retail pharmacy network management

services, home delivery and specialty pharmacy services, manufacturer rebate contracting and

administration, benefit plan design and consultation, claims processing and a variety of clinical

programs such as formulary management and compliance, drug utilization review and disease

and drug therapy management services." 2015 Form 10-K at 77.

29.     In July 2015, UHG acquired Catamaran which generated in fiscal year end 2015

roughly $12.4 billion in revenues, representing 8% of total consolidated revenue. Like OptumRx,

Catamaran offers pharmacy benefits management services to millions of people, health plans,

employers and IT solutions to the pharmacy benefits management industry. Catamaran

previously served as the PBM for Cigna and other health insurance companies.

30.     Accordingly, Optum (represented by Catamaran and the sub-segment OptumRx)

is the PBM for not only the customers of UHC, but other medical and pharmaceutical insurance

providers as well, including Cigna (defined below), Blue Cross Blue Shield and others.

**D.     Defendant Cigna**

31.     Defendant Cigna, through its wholly-owned subsidiaries, including Defendant

Cigna Health and Life Insurance Company ("CHL"), is a fully integrated health insurance

company. Cigna is a global health services organization, incorporated in Delaware, with its

principal place of business in Bloomfield, Connecticut. In 2015, Cigna reported revenue in excess of $37.9 billion, and the company is currently ranked 79th on the Fortune 500.

32.     Cigna operates through three segments: (1) Global Health Care, which is comprised of the Commercial operating segment, which encompasses both the U.S. commercial and certain international health care businesses serving employers and their employees, and other groups, and the Individuals and Government operating segment, which offers Medicare Advantage and Medicare Part D plans to seniors and Medicaid plans; (2) Global Supplemental Benefits, which offers supplemental health, life and accident insurance products in selected international markets and in the U.S; and (3) Group Disability and Life, which provides group long-term and short-term disability, group life, accident and specialty insurance products and related services.

33.     Defendant CHL, incorporated in Connecticut, is a wholly-owned subsidiary of Cigna with its principal place of business in Bloomfield, Connecticut. CHL underwrites life and health insurance policies. The company provides group term life, accidental death and dismemberment, dental, weekly income, and long-term disability insurance.

34.     Cigna and its subsidiaries frequently use Optum as their PBM.

**E.     Defendant JOHN DOES 1-100**

35.     There are a number of defendants and co-conspirators, unknown at this time, who participated in the fraudulent scheme described herein. Plaintiffs/Relators will seek leave to add these additional parties once they have been identified following discovery.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**The PBM Industry & Optum's "Clawback" System**

**A.     Background**

36.     Health insurance is paid for by a premium paid to health insurers for medical and prescription pharmaceutical benefits for a defined period. Premiums can be paid by individuals, employees, unions, employers or other institutions.

37.     If a health insurance policy covers outpatient prescription pharmaceuticals, the cost for prescription pharmaceuticals is often shared between the insured and the insurer. Such cost sharing can take the form of deductible payments, co-insurance payments, and co-payments. In general, deductibles are the dollar amounts the insured pays during the benefit period (usually a year) before the insurer starts to make payments for pharmaceutical costs. Co-insurance requires an insured person to pay a stated percentage of pharmaceutical costs, often after exhausting the deductible limit. Co-payments are fixed dollar payments made by an insured toward pharmaceutical costs.

38.     The pharmaceutical benefits industry consists of complex arrangements between numerous entities, including, but not limited to, pharmaceutical manufacturers, pharmaceutical wholesalers, pharmacy benefit managers ("PBMs"), pharmacies, health insurance companies, employers and insureds.

39.     On the pharmaceutical distribution side of the market, the pharmaceutical manufacturer typically sells pharmaceuticals to a pharmaceutical wholesaler, which then in turn sells the pharmaceuticals to a retail pharmacy. Payments for the pharmaceuticals in turn go from the retail pharmacy to the wholesaler and to the manufacturer. The retail pharmacy then distributes pharmaceuticals to insureds from its inventory.

40.     The retail payment side of the market for pharmaceuticals covered by insurance is largely controlled by insurance companies and their contracted or owned PBMs. In most instances where a health insurance policy provides prescription pharmaceutical benefits, a PBM

is the agent of the insurance company hired to administer the prescription pharmaceutical

component of a health insurance policy. For example, Optum acted as the agent of Defendants in

administering Defendants' prescription pharmaceutical plans.

41.     According to the Pharmaceutical Care Management Association, PBMs manage

pharmacy benefits for 266 million Americans as of 2016. They may operate as part of integrated

retail pharmacies (*e.g.*, CVS Health and Caremark) or as part of health insurance companies

(*e.g.*, UHG and Optum; Cigna and Catamaran (now owned by UHG)).

42.     The three largest public PBMs are Express Scripts, CVS Caremark, and Optum.

These three companies manage the pharmacy benefits of approximately 75% of the market, and

cover 180 million enrollees.

43.     When an insured presents a prescription at a pharmacy, key information such as

the patient's name, pharmaceutical dispensed, and quantity dispensed is transmitted via interstate

wire to a "switch" that then directs the information to the correct PBM. The PBM

instantaneously processes the claim according to the benefits plan assigned to the insured. The

PBM electronically transmits via interstate wire a message back to the pharmacy indicating

whether the pharmaceutical and patient are covered and, if so, the amount the pharmacy must

charge the insured as a co-payment, co-insurance, or to be paid toward a deductible.

44.     The PBM is supposed to pay the pharmacy any amounts owed to the pharmacy

over the insured's co-payment, co-insurance, or deductible charges approximately every two

weeks for the claims that were processed by any given pharmacy in the prior two-week period.

45.     But, if the amount owed by the insured is greater than the amount that the insurer

or its PBM has negotiated to pay the provider pharmacy, there will be a "negative

reimbursement" to the pharmacy for the "Spread" between the insured's obligation and the actual cost of the pharmaceutical to the insurer or its PBM.

46.     The "negative reimbursement" is paid by the pharmacy to Defendants as part of the reconciliation every two weeks.

47.     This payment of a "Spread" to the insurer and/or its PBM—referred to in the industry as a "Clawback"—evidences the overcharge to the insured and, in turn, any secondary insurer that covers all or some of the insured's co-payment, co-insurance, or deductible.

**B.     The Patient–Insurer–PBM–Pharmacy Contractual Relationships**

48.     Contractual relationships exist between the employer and the health insurance company; the health insurance company and the PBM; and the PBM and the pharmacy. As alleged above, an employer buys a health insurance policy from a health insurance company to provide, possibly among others, prescription pharmaceutical benefits for its employees. Health insurance companies then hire PBMs to manage and administer the prescription pharmaceutical benefits offered pursuant to those policies.

49.     The following diagram represents (in simplified form) the contractual relationships existing between the insured and the pharmacy:



(b)     **Employer–Insurer Agreements (*i.e.*, Insurance Policies).** Employers buy health insurance policies to provide prescription pharmaceutical benefits. These policies contain uniform provisions that set forth key plan terms such as the mechanism for and amount of the deductible, co-payment, and/or co-insurance that an insured must pay to obtain prescription pharmaceutical benefits.

(c)     **Insurer–PBM Agreements**. Health insurance companies, such as Defendants, contract with and/or own PBMs, which act as their agents to administer the prescription pharmaceutical benefits purchased through the health insurance policies that the insurers issue.

(d)     **PBM–Pharmacy Agreements**. PBMs in turn, contract with pharmacies, which serve as providers in the insurers' pharmacy network. The pharmacies fill prescriptions that are health benefits covered under the insurers' policies. Pursuant to agreements between the PBM and pharmacies, the pharmacies are contractually required to: (1) fill any and all prescriptions presented by an insured; (2) charge the insured the precise amounts dictated by the PBM/Insurer for the prescriptions being filled; (3) accept any payments from the PBM/Insurer in an amount dictated by the PBM; (4) pay the PBM/Insurer an amount dictated by the PBM/Insurer (known as the "clawback"); and, (5) submit a claim to and charge any secondary insurance payor an amounted dictated by the PBM/Insurer.  As a result, the pharmacy has little to no discretion with regard to the pricing and charges associates with a pharmaceutical transaction. Moreover, pursuant to those same agreements with the PBM, the pharmacy is prohibited from informing an insured that the amount the insured owes under his or her insurance plan is greater than the pharmacy's charges (or the amount the pharmacy has agreed to accept as payment in full) for the pharmaceutical.

50.     The relationship among the parties is shown graphically as follows:

- 15 -



51.     Pursuant to the health insurance policies between an insurance company and its customers, insurers (in their role as a third party administrator) must ensure that, when they contract with a PBM to act as their agent to manage prescription pharmaceutical benefits under the health insurance policies, the PBM follows the policies' terms.

52.     To the contrary, PBMs, acting as agents and/or in concert with health insurance companies, routinely charge insureds substantially higher prices for prescription pharmaceuticals than are allowed under the health insurance policies resulting in claims being submitted to Medicaid as a secondary payor when no such claim should have been filed at all.

**C.     Optum Charges Undisclosed, Unauthorized and
        Excessive Fees for Prescriptions Pharmaceuticals**

53.     By manipulating the above employer-insurer-PBM-pharmacy structure, Optum has created a scheme to charge undisclosed, unauthorized, and excessive fees. Under the agreements Optum enters into between the various participants, the pharmacy charges the insureds a prescription pharmaceutical price (the "Insureds' Price") that is set by Optum and which is typically based on a percentage of the so-called average wholesale price or the

maximum allowable cost. Alternatively, the pharmacy charges the insured a co-payment, which also is set by Optum.

54.     The Insured's Price or co-payment amount is routinely higher than the price the PBM agrees to pay the pharmacy for providing the pharmaceutical to the insureds. This is so for many low-cost, high volume generic prescription pharmaceuticals. As a result, the insured—or, as relevant here, the government as a secondary payer—pays an amount that is higher than the amount the pharmacist is contractually obligated to accept. However, because of confidentiality provisions contained in the PBM-Pharmacy Agreements, pharmacies are prohibited from informing customers that they are being overcharged, much less sell pharmaceuticals to them at a lower price separate and apart from the insurance policies (*i.e.*, by paying cash).

55.     In summary, the PBM–Pharmacy Agreements: (1) require pharmacies to charge insureds more for pharmaceuticals than the Defendants and their PBM agree to pay the pharmacies, with the difference between the two amounts known as the "Spread;" (2) require the pharmacies to collect the "Spread" from insureds; (3) require deduction of the "Spread" from future reimbursement to the pharmacy by the PBM as a "Clawback;" (4) prohibit pharmacies from disclosing to insureds the existence or amount of the "Spread" and "Clawback;" (5) prohibit pharmacies from disclosing to insureds that they can purchase pharmaceuticals at lower prices; and (6) prohibit pharmacies from selling to insureds covered prescription pharmaceuticals at prices that are lower than the price that the insurer/PBM orders the pharmacies to charge the insureds. Instead, the "Spread" and "Clawback" overcharges are pocketed by the insurance companies and/or their agents.  As discussed in detail below, when the insured has a secondary payor such as Medicaid, the pernicious effect of the clawback scheme directly and negatively impacts Medicaid funds.

- 17 -

**D.    "Clawbacks" Are Most Common With Widely Used Pharmaceuticals**

56.    Optum imposes "Clawbacks" most frequently on widely used, low-cost

pharmaceuticals, and particularly generic pharmaceuticals, where the cost of the pharmaceutical

is relatively low. This enables Optum to impose charges (either co-payments or an amount

credited to the insured's deductible) that are higher than the cost of the pharmaceutical, thereby

insuring for itself a "Clawback." These commonly used pharmaceuticals include, but are not

limited to: Alprazolam, Amlodipine, Amoxicilin, Bactrim (Sulfamethoxazole Trimethoprim),

Bupropion, Buspirone, Citalopran, Ciprofloxacin, Clonazepam, Cyclobenzaprine, Diazepam,

Flonase (Fluticasone), Gabapentin, Hydrochlorothiazide, Ibuprofen, Lamotrigine, Lexapro

(Escitalopram), Lisinopril, Meloxican, Naproexen, Nitrofurantoin, Oxybutynin, Percocet

(Oxycodone and Acetaminophen), Prozac (Fluoxetine), Sprintec, Tamiflu (Oseltarmivir),

Tizanidine, Tramedol, Trazone, Valsartan, Venlafaxine, Ventolin, and Zolpidem,

**DEFENDANTS' SUBMISSION OF FALSE CLAIMS TO, AND RETAINED
OVERPAYMENTS FROM, FEDERAL AND STATE HEALTH CARE PROGRAMS**

57.    As a result of their clawback scheme, Defendants have caused the submission of

false secondary payer claims to the government resulting in hundreds of millions of dollars in

improper payments by United States and the *Qui Tam* States, unjustly enriching Defendants.

**A.    Federal Government-funded Health Programs**

58.    The Health Insurance for the Aged and Disabled Program, known as Medicare,

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* ("Medicare"), is a health

insurance program administered by the United States Government, funded by taxpayer revenue.

The United States Department of Health and Human Services ("HHS"), through its Centers for

Medicare and Medicaid Services ("CMS"), oversees Medicare.

59.     The Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v ("Medicaid"), is a health insurance program administered by the United States Government and the States and is funded jointly by state and federal taxpayer revenue. CMS and HHS oversee Medicaid jointly with agencies in each State. Each named *Qui Tam* State participates in Medicaid, and each named *Qui Tam* State's Medicaid program paid amounts that Defendants collected through the "clawback" scheme.

60.     Medicaid is designed to assist participating States in providing medical services, medical equipment, and prescription pharmaceuticals to needy individuals that qualify for Medicaid. The States and federal government share reimbursement costs. States directly pay providers, and then obtain the federal contribution from accounts drawn on the United States Treasury. 42 C.F.R. §§ 430.0-430.5, 430.10, 430.12, 430.14-430.16, 430.18, 430.20, 430.25, 430.30, 430.32-430.33, 430.35, 430.38, 430.40,430.42, 430.45, 430.48 (1994). Federal funding for the Medicaid Program includes support for Medicare Savings Programs which help qualifying Medicare beneficiaries pay Part A and B premiums, co-payments, co-insurance, and deductibles.

61.     Medicaid may serve as the primary insurer, or in some instances as the secondary insurer (*e.g.*, with Medicare or private insurance paying primary coverage).

62.     Medicaid regulations set limits on how much a State may pay for a prescription pharmaceutical. 42 C.F.R. §§ 447.304, 447.500-522.

63.     Medicaid does not make a secondary payment if the provider is either obligated to accept, or voluntarily accepts, as full payment, a primary payment that is less than the provider's charges. *See* 42 C.F.R. § 433.139(b)(1); Centers for Medicare and Medicaid Services, State

Medicaid Manual, CMS Pub. 45, § 3904.7, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Paper-Based-Manuals.html.

64.     The Civilian Health and Medical Program of the United States ("CHAMPUS") (now known as "TRICARE"), 10 U.S.C. §§ 1071-1106, provides benefits for health care services furnished by civilian providers, physicians, and suppliers to members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members. TRICARE pays for, among other things, medical devices and surgeries for its beneficiaries.

65.     TRICARE is secondary payer to all third-party payers. 32 C.F.R. § 199.2. A TRICARE secondary payment may not exceed the pharmacy's actual charge (or the amount the pharmacy is obligated to accept as payment in full if that is less than the charges). *See* 32 C.F.R. § 199.4(g)(11). In this regard, TRICARE does not make a secondary payment if the provider is either obligated to accept, or voluntarily accepts, as full payment, a primary payment that is less than the provider's charges. *See id*.

66.     CHAMPVA, administered by the United States Department of Veterans Affairs ("VA"), is a health care program for the families of veterans with 100-percent service-connected disability, or who died from a VA-rated-service-connected disability.

67.     Under its PBM program, CHAMPVA's secondary payment may not exceed the pharmacy's actual charge (or the amount the pharmacy is obligated to accept as payment in full if that is less than the charges). *See* Dep't of Veteran Affairs, CHAMPVA Policy Manual, ch. 3, § 5.11(I)(D)(e), *available at* https://www.va.gov/PURCHASEDCARE/docs/pubfiles/policymanuals/champva/default.htm.

68.     CHAMPVA will actively pursue third-party liability/medical care cost recovery in accordance with applicable law. 38 C.F.R. § 17.277.

69.     The Federal Employee Health Benefits Program ("FEHBP") provides healthcare benefits for qualified federal employees and their dependents. It pays for, among others, medical devices and surgeries for its beneficiaries. Under the FEHBP, the federal employee is covered by private payer health insurance which is in turn subsidized in part by the federal government. As a result, fraud on an patient covered by the FEHBP constitutes fraud on the federal government and the loss of federal funds.

70.     Together, the programs described above, along with any other government-funded healthcare programs, are referred to as "Government Health Programs."

71.     In addition to the regulations set forth above, reimbursement practices under all Government Health Programs closely align with the rules and regulations governing Medicare reimbursement. The most basic reimbursement requirement under Medicare, Medicaid, and other Government Health Programs is that the service provided must be reasonable and medically necessary. *See, e.g.*, 42 U.S.C. § 1395y(a)(I)(A); 42 U.S.C. §§ 1396, *et seq.*; 42 C.F.R. §§ 410.50, 411.15, 411.406. Physicians and hospitals enter into Provider Agreements with CMS in order to establish their eligibility to seek Medicare reimbursements.

72.     When submitting a claim for payment, a provider does so subject to and under the terms of the provider's certification to the United States that the services were delivered in accordance with federal law, including, for example, Government Health Program laws and regulations. Similar state Medicaid applicable certifications also incorporate relevant state laws and regulations. Government Health Programs require compliance with these certifications as a material condition of payment, and claims that violate these certifications are false or fraudulent claims under the False Claims Act. CMS, its fiscal agents, and relevant State health agencies will not pay claims for services provided in violation of relevant state or federal laws.

73.     Defendants may be liable under the Federal and State *qui tam* statutes even if they are not the entity submitting the claim or reimbursement to the government because a party who *causes* another party—such as a pharmacy that is contractually bound to follow the instructions of its PBM/Insurer counterparty—is equally or even principally liable as the party submitting the claim.

**B.   Defendants Submit False Claims To, And Retain Overpayments From, The Government Health Programs**

**1.   Government Health Programs As Secondary Insurer**

74.     Defendants have and continue to cause Government Health Programs that operate as secondary insurers to overpay for an insured's prescription pharmaceutical purchases. Defendants accomplish this by submitting false bills to the government in connection with an insured's pharmaceutical purchases and collecting fees from the government in connection with those pharmaceutical purchases even after the cost of those pharmaceuticals have been fully satisfied.

75.     In some cases, Defendants bill and collect fees from the government for such pharmaceutical purchases despite the fact that Defendants have or will receive an amount several times the cost of those pharmaceuticals.

76.     Defendants have accomplished this through an opaque system of pricing and payments which conceals the fact by the time the government is asked to submit payment as a secondary insurer, no financial obligation exists because the secondary payment being sought exceeds the pharmacy's actual charge (or the amount the pharmacy is obligated to accept as payment in full if that is less than the charges). Defendants have and continue to submit to the Government Health Programs false claims regarding the amounts owed and have and continue to retain overpayments made by these programs in connection with pharmaceutical purchases.

77.     An illustrative example of an impressible charge to Medicaid occurred on June 16, 2015, when an insured customer sought to buy prescription pharmaceuticals. This insured had Cigna as a primary insurer and Medicaid as a secondary insurer under ████ Medicaid program.

78.     Cigna's PBM is Optum. As detailed above, Optum negotiated the price of the pharmaceutical and established the computer systems that would adjudicate the claim and transaction at issue. According to Cigna, the retail price of the pharmaceutical at issue in the June 16, 2015, transaction is ████ with an actual price of ████ (comprised of a ████ ingredient cost and a ████ dispending fee).

79.     Ordinarily, the insured patient would have paid the pharmacist a co-payment amount, with Cigna receiving an unauthorized and undisclosed "clawback." However, because the insured had a secondary insurer (Medicaid), the insured paid nothing under ████ Medicaid rules. Instead, Cigna debited the pharmacist its ████ "clawback" and directed that the secondary payer (Medicaid) pay the pharmacist ████.

80.     To process the transaction, the pharmacist involved in the June 16, 2015, transaction entered into the pharmacy's computer program the information regarding the pharmaceutical as well as the information from the insured's two insurance cards (Cigna and Medicaid). Once that information was entered, the following screen (Images 1b) was displayed which confirms the flow of money with respect to Cigna (the primary insurer or plan) and Medicaid (the secondary insurer or plan):



Image 1

81.    As reflected in the screenshots depicted in Image 1, above, Medicaid paid ████

but Cigna received ████ Thus, the pharmacy ultimately agreed to accept payment for less than

the amount of its charges. Although the pharmacy received ████ from the government, it

ultimately was paid nothing because it owed ████ to Cigna.

82.    A second illustrative example of an impressible charge to Medicaid occurred on

July 14, 2015, when an insured customer sought to buy prescription pharmaceuticals. This

insured had Cigna as a primary insurer and Medicaid as a secondary insurer under ████

Medicaid program.

83.    Cigna's PBM is Optum. As detailed above, Optum negotiated the price of the

pharmaceutical and established the computer systems that would adjudicate the claim and

transaction at issue. According to Cigna, the retail price of the pharmaceutical at issue in the July

14, 2015, transaction is ███████, with an actual price of ██████ (comprised of a ██████ ingredient cost and a ██████ dispending fee).

84.     Ordinarily, the insured patient would have paid the pharmacist a co-payment amount, with Cigna receiving an unauthorized and undisclosed "clawback." However, because the insured had a secondary insurer (Medicaid), the insured paid nothing under ██████ Medicaid rules. Instead, Cigna debited the pharmacist its ██████ "clawback" and directed that the secondary payer (Medicaid) pay the pharmacist ██████

85.     To process the transaction, the pharmacist involved in the July 14, 2015, transaction entered into the pharmacy's computer program the information regarding the pharmaceutical as well as the information from the insured's two insurance cards (Cigna and Medicaid). Once that information was entered, the following screen (Images 2) was displayed which confirms the flow of money with respect to Cigna (the primary insurer or plan) and Medicaid (the secondary insurer or plan):



Image 2

86.     As reflected in the screenshots depicted in Image 2, above, Medicaid paid ▇▇▇ but Cigna received ▇▇▇ Thus, the pharmacy ultimately agreed to accept payment for less than the amount of its charges. Although the pharmacy received ▇▇▇ from the government, it ultimately was paid nothing because it owed ▇▇▇ to Cigna.

87.     The above two examples demonstrate how Optum, through Cigna, provided no goods or services in exchange for its receipt of the "clawbacks" and Medicaid was charged amounts despite the fact that the provider (i.e., the pharmacy) agreed to a compensation amount that resulted in no further financial obligation on the part of any secondary payer (i.e., Medicaid).

88.     By setting up this opaque system of pricing and payments, concealing the nature of these payments and prohibiting the pharmacist from disclosing these payments, Defendants have defrauded the government and unjustly enriched themselves.

3.      *Qui Tam* **State Programs**

89.      In addition to causing the submission of false secondary insurance claims to Government Health Programs, Defendants' scheme caused insureds whose charges were not covered by secondary insurance coverage to pay excessive amounts for prescription pharmaceuticals. This has allowed those insureds to meet their deductibles sooner. As a result, various *Qui Tam* State government employers—who are obligated to pay for their employee health costs following the satisfaction of such employee's deductible—became obligated to pay for such insured's pharmaceutical costs sooner than they otherwise would have. This has caused the *Qui Tam* States to pay more than they should have, resulting in Defendants' retaining more overpayments.

## COUNTS

### COUNT I
### False Claims Act
### 31 U.S.C. §§3729(a)(1)(A), (a)(1)(B), and (a)(1)(D)
### (Against All Defendants)

90.      Plaintiffs repeat and reallege each allegation contained above as though fully set forth herein.

91.      This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729, *et seq*., as amended.

92.      By virtue of the acts described above, Defendants in reckless or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information involved, knowingly presented or caused to be presented, false or fraudulent claims to officers, employees or agents of the United States Government for payment or approval, within the meaning of 31 U.S.C. §3729(a)(1)(A).

93.     By virtue of the acts described above, Defendants in reckless or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information involved, knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, within the meaning of 31 U.S.C. §3729(a)(1)(B).

94.     The United States, unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants, in reliance of the claims paid and/or statements, continues to maintain false reporting documents, as do the states.

95.     By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

96.     Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants arising from their unlawful conduct as described herein.

**COUNT II**
**False Claims Act**
**31 U.S.C. §3729(a)(1)(G)**
**(Against All Defendants)**

97.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

98.     This is a claim for penalties and treble damages under the Federal False Claims Act.

99.     By virtue of the acts described above, Defendants in reckless or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information involved, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the

Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, within the meaning of 31 U.S.C. §3729(a)(1)(G).

100.    As a result, monies were lost to the United States through the non-payment or non-transmittal of money or property owed to the United States by the Defendants, and other costs were sustained by the United States.

101.    By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

102.    Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every false record or statement knowingly made, used, or caused to be made or used to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States.

**COUNT III**
**California False Claims Act**
**Cal Gov't. Code § 12651(a)(1)–(2), (4), (7)**
**(Against All Defendants)**

103.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

104.    This is a claim for treble damages and penalties under the California False Claims Act.

105.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

106.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the California State Government to approve and pay such false and fraudulent claims.

107.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the California State Government.

108.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

109.    By reason of the Defendants' acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

110.    Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT IV**
**Colorado Medicaid False Claims Act**
**C.R.S. § 25.5-4-305(1)(a)–(c), (f)**
**(Against All Defendants)**

111.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

112.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

113.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

- 30 -

114.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Colorado State Government to approve and pay such false and fraudulent claims.

115.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Colorado State Government.

116.     The Colorado State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

117.     By reason of the Defendants' acts, the State of Colorado has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

118.     Additionally, the Colorado State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT V**
**Connecticut False Claims Act**
**Conn. Gen. Stat. § 17b-301b(a)(1),(8), *et seq.***
**(Against All Defendants)**

119.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

120.     This is a claim for treble damages and penalties under the Connecticut False Claims Act.

121.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut State Government for payment or approval.

122.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Connecticut State Government to approve and pay such false and fraudulent claims.

123.     The Connecticut State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

124.     By reason of the Defendants' acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

125.     Additionally, the Connecticut State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT VI**
**Delaware False Claims And Reporting Act**
**6 Del C. § 1201(a)(1)–(2), (4), (7)**
**(Against All Defendants)**

126.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

127.     This is a claim for treble damages and penalties under the Delaware False Claims And Reporting Act.

128.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Delaware State Government for payment or approval.

129.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Delaware State Government to approve and pay such false and fraudulent claims.

130.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Delaware State Government.

131.     The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

132.     By reason of the Defendants' acts, the State of Delaware has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

133.     Additionally, the Delaware State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## COUNT VII
### Florida False Claims Act
### Fla. Stat. Ann. § 68.082(2)(a)–(b), (d), (g); Fla. Stat. Ann. § 409.920(2)(a)(1)
### (Against All Defendants)

134.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

135.     This is a claim for treble damages and penalties under the Florida False Claims Act and Florida Medicaid Fraud Statute.

136.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Florida State Government for payment or approval.

137.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Florida State Government to approve and pay such false and fraudulent claims.

- 33 -

138.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Florida State Government.

139.     The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

140.     By reason of the Defendants' acts, the State of Florida has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

141.     Additionally, the Florida State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT VIII**
**Georgia False Medicaid Claims Act**
**Ga. Code Ann. § 49-4-168.1(1)–(2), (4) (7)**
**(Against All Defendants)**

142.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

143.     This is a claim for treble damages and penalties under the Georgia False Medicaid Claims Act.

144.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Georgia State Government for payment or approval.

145.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to get the Georgia State Government to approve and pay such false and fraudulent claims.

146.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Georgia State Government.

147.     The Georgia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

148.     By reason of the Defendants' acts, the State of Georgia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

149.     Additionally, the Georgia State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT IX**
**Hawaii False Claims Act**
**Haw. Rev. Stat. § 661-21(a)(1)–(3), (6)**
**(Against All Defendants)**

150.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

151.     This is a claim for treble damages and penalties under the Hawaii False Claims Act.

152.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

153.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Hawaii State Government to approve and pay such false and fraudulent claims.

154.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Hawaii State Government.

155.     The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

156.     By reason of the Defendants' acts, the State of Hawaii has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

157.     Additionally, the Hawaii State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## COUNT X
### Illinois Whistleblower Reward And Protection Act
### 740 Ill. Comp. Stat. § 175/3(a)(1)(A)–(B), (D), (G)
### (Against All Defendants)

158.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

159.     This is a claim for treble damages and penalties under the Illinois Whistleblower Reward And Protection Act.

160.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Illinois State Government for payment or approval.

161.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Illinois State Government to approve and pay such false and fraudulent claims.

- 36 -

162.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Illinois State Government.

163.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

164.    By reason of the Defendants' acts, the State of Illinois has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

165.    Additionally, the Illinois State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## COUNT XI
### Indiana False Claims and Whistleblower Protection Act
### IC § 5-11-5.5-2(b)(1), (2), (4), (6), (8)
### (Against All Defendants)

166.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

167.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act.

168.    By virtue of the acts described above, Defendants knowingly made or used false records and statements to obtain payment or approval of a false claim from the Indiana State Government.

169.    By virtue of the acts described above, Defendants knowingly made or used false records or statements to avoid an obligation to pay or transmit property to the Indiana State Government.

- 37 -

170.    The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

171.    By reason of the Defendants' acts, the State of Indiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

172.    Additionally, the Indiana State Government is entitled to a penalty of at least $5,000 for each and every violation alleged herein.

**COUNT XII**
**Iowa False Claims Act**
**Iowa Code Ann. § 685.2(1)(a), (b), (d), (g)**
**(Against All Defendants)**

173.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

174.    This is a claim for treble damages and penalties under the Iowa False Claims Act. 351. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Iowa State Government for payment or approval.

175.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Iowa State Government to approve and pay such false and fraudulent claims.

176.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Iowa State Government.

177.    The Iowa State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

178.     By reason of the Defendants' acts, the State of Iowa has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

179.     Additionally, the Iowa State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### COUNT XIII
### Louisiana Medical Assistance Programs Integrity Law
### La. Rev. Stat. § 46:438.3(A)–(C); §§ 46:439.1, *et seq.*; & §§ 46:440.1, *et seq.*
### (Against All Defendants)

180.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

181.     This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

182.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Louisiana State Government.

183.     By virtue of the acts described above, Defendants knowingly engaged in misrepresentation or made, used, or caused to be made or used false records and statements, to obtain payment for false and fraudulent claims from the Louisiana State Government.

184.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Louisiana State Government.

185.     The Louisiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

186.     By reason of the Defendants' acts, the State of Louisiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

187.     Additionally, the Louisiana State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## COUNT XIV
### The Maryland False Health Claims Act
### Md. Code Ann., Health-Gen. §§ 2-602(a)(1), (2), (4), (7)–(9)
### (Against All Defendants)

188.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

189.     This is a claim for treble damages and penalties under the Maryland False Health Claims Act.

190.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Maryland State Government for payment or approval.

191.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Maryland State Government to approve and pay such false and fraudulent claims.

192.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Maryland State Government.

193.     The Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

194.     By reason of the Defendants' acts, the State of Maryland has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

195.    Additionally, the Maryland State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### COUNT XV
**Massachusetts False Claims Law**
**Mass. Gen. Laws Ch. 12 § 5B(a)(1)–(2), (5), (9)**
**(Against All Defendants)**

196.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

197.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

198.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Massachusetts State Government for payment or approval.

199.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Massachusetts State Government to approve and pay such false and fraudulent claims.

200.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Massachusetts State Government.

201.    The Massachusetts State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

202.    By reason of the Defendants' acts, the State of Massachusetts has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

- 41 -

203.    Additionally, the Massachusetts State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## COUNT XVI
### Michigan Medicaid False Claims Act
### § 400.603(1)–(2)
### (Against All Defendants)

204.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

205.    This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act.

206.    By virtue of the acts described above, Defendants knowingly made or caused to be made a false statement or false representation of material fact in an application for Medicaid benefits to the Michigan State Government.

207.    By virtue of the acts described above, Defendants knowingly made or caused to be made a false statement or false representation of material fact for use in determining rights to a Medicaid benefit.

208.    The Michigan State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

209.    By reason of the Defendants' acts, the State of Michigan has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

210.    Additionally, the Michigan State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## COUNT XVII
### Minnesota False Claims Act
### Minn. Stat. § 15C.02(a)(1)–(2), (4), (7)

- 42 -

**(Against All Defendants)**

211.    Plaintiffs repeat and reallege each and every allegation contained in the

paragraphs above as though fully set forth herein.

212.    This is a claim for treble damages and penalties under the Minnesota False Claims

Act. By virtue of the acts described above, Defendants knowingly presented or caused to be

resented, false or fraudulent claims to the Minnesota State Government for payment or approval.

213.    By virtue of the acts described above, Defendants knowingly made, used, or

caused to be made or used false records and statements, to get the Minnesota State Government

to approve and pay such false and fraudulent claims.

214.    By virtue of the acts described above, Defendant knowingly made, used, or

caused to be made or used, false records or statements to conceal, avoid, or decrease an

obligation to pay or transmit money or property to the Minnesota State Government.

215.    The Minnesota State Government, unaware of the falsity of the records,

statements and claims made, used, presented or caused to be made, used or presented by

Defendants, paid and continues to pay the claims that would not be paid but for Defendants'

unlawful conduct.

216.    By reason of the Defendants' acts, the State of Minnesota has been damaged, and

continues to be damaged, in substantial amount to be determined at trial.

217.    Additionally, the Minnesota State Government is entitled to the maximum penalty

of $11,000 for each and every violation alleged herein.

**COUNT XVIII**
**Montana False Claims Act**
**Mont. Code Ann. 17-8-403(1)(a)–(b), (d), (g)**
**(Against All Defendants)**

218.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

219.    This is a claim for treble damages and penalties under the Montana False Claims Act. 399. By virtue of the acts described above, Defendants knowingly presented or caused to be resented, false or fraudulent claims to the Montana State Government for payment or approval.

220.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Montana State Government to approve and pay such false and fraudulent claims.

221.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Montana State Government.

222.    The Montana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

223.    By reason of the Defendants' acts, the State of Montana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

224.    Additionally, the Montana State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XIX**
**Nevada Submission of False Claims**
**to State or Local Government Act**
**Nev. Rev. Stat. Ann. § 357.040(1)(a)–(c), (g)**
**(Against All Defendants)**

225.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

226.    This is a claim for treble damages and penalties under the Nevada Submission of False Claims to State or Local Government Act.

227.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Nevada State Government for payment or approval.

228.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Nevada State Government to approve and pay such false and fraudulent claims.

229.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Nevada State Government.

230.    The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

231.    By reason of the Defendants' acts, the State of Nevada has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

232.    Additionally, the Nevada State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XX**
**New Jersey False Claims Act**
**N.J. Stat. § 2A:32C-3(a)–(b), (g)**
**(Against All Defendants)**

233.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 45 -

234.    This is a claim for treble damages and penalties under the New Jersey False Claims Act.

235.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Jersey State Government for payment or approval.

236.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the New Jersey State Government to approve and pay such false and fraudulent claims.

237.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the New Jersey State Government.

238.    The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

239.    By reason of the Defendants' acts, the state of New Jersey has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

240.    Additionally, the New Jersey State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

### COUNT XXI
### New Mexico Medicaid False Claims Act
### N.M. Stat. Ann. § 27-14-4(A), (C), (E); N.M. Stat. Ann. § 44-9-3(A)(1)–(2), (5), (8)–(9)
### (Against All Defendants)

241.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

242.     This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act.

243.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval.

244.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the New Mexico State Government to approve and pay such false and fraudulent claims.

245.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the New Mexico State Government.

246.     The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

247.     By reason of the Defendants' acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

248.     Additionally, the New Mexico State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XXII**
**New York False Claims Act**
**NY CLS St. Fin. § 189(a)–(b), (d) (g)–(h)**
**(Against All Defendants)**

249.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 47 -

250.     This is a claim for treble damages and penalties under the New York False Claims Act.

251.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New York State Government for payment or approval.

252.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the New York State Government to approve and pay such false and fraudulent claims.

253.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the New York State Government.

254.     The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

255.     By reason of the Defendants' acts, the State of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

256.     Additionally, the New York State Government is entitled to the maximum penalty of $12,000 for each and every violation alleged herein.

**COUNT XXIII**
**North Carolina False Claims Act**
**2009-554 N.C. Sess. Laws § 1-607(a)(1)–(2), (4), (7)**
**(Against All Defendants)**

257.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 48 -

258.    This is a claim for treble damages and penalties under the North Carolina False Claims Act.

259.    By virtue of the acts described above, Defendants knowingly presented or caused o be presented, false or fraudulent claims to the North Carolina State Government for payment or approval.

260.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the North Carolina State Government to approve and pay such false and fraudulent claims.

261.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the North Carolina State Government.

262.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

263.    By reason of the Defendants' acts, the State of North Carolina has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

264.    Additionally, the North Carolina State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT XXIV**
**Oklahoma Medicaid False Claims Act**
**Okla. Stat. tit. 63, § 5053.1(B)(1)–(2), (4), (7)**
**(Against All Defendants)**

265.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 49 -

266.     This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

267.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Oklahoma State Government for payment or approval.

268.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Oklahoma State Government to approve and pay such false and fraudulent claims.

269.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Oklahoma State Government.

270.     The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

271.     By reason of the Defendants' acts, the State of Oklahoma has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

272.     Additionally, the Oklahoma State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XXV**
**Rhode Island State False Claims Act**
**R.I. Gen. Laws § 9-1.1-3(1)–(2), (4), (7)**
**(Against All Defendants)**

273.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 50 -

274.    This is a claim for treble damages and penalties under the Rhode Island State False Claims Act.

275.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Rhode Island State Government for payment or approval.

276.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Rhode Island State Government to approve and pay such false and fraudulent claims.

277.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Rhode Island State Government.

278.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

279.    By reason of the Defendants' acts, the State of Rhode Island has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

280.    Additionally, the Rhode Island State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XXVI**
**Tennessee Medicaid False Claims Act**
**Tenn. Code Ann. §§ 4-18-103(a)(1)–(2), (7)**
**and 71-5-182(a)(1)(A), (B) and (D)**
**(Against All Defendants)**

281.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

282.    This is a claim for treble damages and penalties under the Tennessee Medicaid False Claims Law.

283.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Tennessee State Government for payment or approval.

284.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Tennessee State Government to approve and pay such false and fraudulent claims.

285.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Tennessee State Government.

286.    The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

287.    By reason of the Defendants' acts, the State of Tennessee has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

288.    Additionally, the Tennessee State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XXVII**
**Texas Medicaid Fraud Prevention Act**
**Tex. Hum. Res. Code Ann. § 36.002(4)(B), (12)**

289.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

290.    This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Act.

291.    By virtue of the acts described above, Defendants knowingly made, caused to be made, induced or sought to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid program.

292.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Texas.

293.    Texas, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

294.    By reason of the Defendants' acts, the State of Texas has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

295.    Additionally, Texas is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT XXVIII**
**Vermont False Claims Act**
**Vt. Stat. tit. 32, § 631(a)(1)–(2), (9)–(10)**
**(Against All Defendants)**

296.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

297.     This is a claim for treble damages and penalties under the Vermont False Claims Act.

298.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Vermont State Government for payment or approval.

299.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Vermont State Government to approve and pay such false and fraudulent claims.

300.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Vermont State Government.

301.     The Vermont State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

302.     By reason of the Defendants' acts, the State of Vermont has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

303.     Additionally, the Vermont State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**COUNT XXIX**
**Virginia Fraud Against Taxpayers Act**
**Va. Code Ann. § 8.01-216.3(A)(1)–(2), (4), (7)**
**(Against All Defendants)**

304.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 54 -

305.     This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

306.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Virginia State Government for payment or approval.

307.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to induce the Virginia State Government to approve and pay such false and fraudulent claims.

308.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Virginia State Government.

309.     The Virginia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

310.     By reason of the Defendants' acts, the Commonwealth of Virginia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

311.     Additionally, the Virginia State Government is entitled to the maximum penalty $11,000 for each and every violation alleged herein.

**COUNT XXX**
**Washington Health Medicaid Fraud False Claim Act**
**Wash. Rev. Code §§ 74.66.020(1)(a)–(b), (d), (g);**
**Wash. Rev. Code §§ 48.80.030(1), (3)–(4)**
**(Against All Defendants)**

312.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

- 55 -

313.     This is a claim for treble damages and penalties under the Washington Health Care False Claims Act.

314.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Washington State Government for payment or approval.

315.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Washington State Government to approve and pay such false and fraudulent claims.

316.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Washington State Government.

317.     The Washington State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

318.     By reason of the Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

319.     Additionally, the Washington State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

### COUNT XXXI
### Wisconsin False Claims For Medical Assistance Act
### Wis. Stat. § 20.931(2)(a)-(c), (g)
### (Against All Defendants)

320.     Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

321.     This is a claim for treble damages and penalties under the Wisconsin False Claims for Medical Assistance Act.

322.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Wisconsin State Government for payment or approval.

323.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the Wisconsin State Government to approve and pay such false and fraudulent claims.

324.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Wisconsin State Government.

325.     The Wisconsin State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

326.     By reason of the Defendants' acts, the State of Wisconsin has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

327.     Additionally, the Wisconsin State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**COUNT XXXII**
**District of Columbia False Claims Act**
**D.C. Code Ann. § 2-381.02(a)(1)–(3), (6), (8)**
**(Against All Defendants)**

328.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein. This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

329.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia Government for payment or approval.

330.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the District of Columbia Government to approve and pay such false and fraudulent claims.

331.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District of Columbia Government.

332.    The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

333.    By reason of the Defendants' acts, the District of Columbia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

334.    Additionally, the District of Columbia Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against the Defendants as follows:

- 58 -

A.      that Defendants cease and desist from violating 31 U.S.C. §§ 3729, *et seq.*, and the counterpart provisions of the state statutes set forth above;

B.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

C.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of California has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned California False Claims Act;

D.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Colorado has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Colorado Medicaid False Claims Act;

E.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Connecticut has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Connecticut False Claims Act;

F.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Delaware False claims and Reporting Act;

G.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Florida False Claims Act;

H.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Georgia has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Georgia False Medicaid Claims Act;

I.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Hawaii False Claims Act;

J.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Illinois Whistleblower and Protection Act;

K.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendants' actions, plus a civil penalty of at least $5,000 for each violation of the aforementioned Indiana False Claims and Whistleblower Protection Act;

L.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Iowa has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Iowa False Claims Act;

M.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Louisiana has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Louisiana Medical Assistance Programs Integrity Law;

N.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Maryland has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Maryland False Health Claims Act;

O.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Massachusetts has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Massachusetts False Claims Act;

P.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Michigan has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Michigan Medicaid False Claims Act;

Q.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Minnesota has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Minnesota False Claims Act;

R.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Montana has sustained because of Defendants' actions,

plus a civil penalty of $10,000 for each violation of the aforementioned Montana False Claims Act;

S.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Nevada Submission of False Claims to State or Local Government Act;

T.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned New Jersey False Claims Act;

U.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned New Mexico Medicaid False Claims Act;

V.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New York has sustained because of Defendants' actions, plus a civil penalty of $12,000 for each violation of the aforementioned New York False Claims Act;

W.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of North Carolina has sustained because of Defendants' actions, plus a civil penalty or $11,000 for each violation of the aforementioned North Carolina False Claims Act;

X.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Oklahoma has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Oklahoma Medicaid False Claims Act;

Y.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Rhode Island False Claims Act;

Z.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Tennessee Medicaid False Claims Act;

AA.     that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Texas has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Texas Medicaid Fraud Prevention Act;

BB.     that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Vermont has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Vermont False Claims Act;

CC.     that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Virginia has sustained because of Defendants' actions,

plus a civil penalty of $11,000 for each violation of the aforementioned Virginia Fraud Against Act;

DD.    that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Washington has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the aforementioned Washington Healthcare False Claims Act;

EE.    that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Wisconsin has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned Wisconsin False Claims for Medical Assistance Act;

FF.    that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of the aforementioned District of Columbia False Claims Act;

GG.    that plaintiffs be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act, and the equivalent provisions of the state statutes set forth above;

HH.    that plaintiffs be awarded all costs of this action, including attorneys' fees and expenses;

II.    that plaintiffs be awarded both pre and post-judgment interest; and,

JJ.    that plaintiffs be granted such other and further relief as the Court deems just and proper.

- 64 -

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(a), plaintiffs hereby demand a trial by

jury of all issues so triable.

Dated: March 8, 2017

Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct437939)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
Mathew Jasinski (ct27520)
**MOTLEY RICE LLC**
One Corporate Center
20 Church Street, Floor 17
Hartford, CT 06103
Telephone: (860) 882-1676
Fax: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Ronen Sarraf
Joseph Gentile
**SARRAF GENTILE LLP**
14 Bond Street, Suite 212
Great Neck, New York 11021
Telephone: (516) 699-8890
Fax: (516) 699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

*Attorneys for Plaintiffs / Relators*

- 65 -